*Exhibit B*

CONAL DOYLE, ESQ., SBN 227554
conal@conaldoylelaw.com
STEPHEN BEKE, ESQ., SBN 290972
sbeke@conaldoylelaw.com
**DOYLE LAW, APC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel:  310-385-0567

Leonard A. Bennett
len@clalegal.com
(*pro hac vice forthcoming*)
Craig C. Marchiando, Esq. SBN 283829
craig@clalegal.com
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660

MARC R. EDELMAN, ESQ.
MEdelman@forthepeople.com
(*pro hac vice forthcoming*)
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Facsimile: 813-257-0572

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/16/2023 3:56 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Jackson Aubry, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ERIC CRAIN, *for himself and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>INTELIFI, INC.,<br><br>Defendant. | Case No.: 23STCV11103<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Eric Crain, by and through his undersigned Counsel, alleges the following against Defendant, Intelifi, Inc. ("Intelif" or "Defendant").

## PRELIMINARY STATEMENT

1.     This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x and the common law tort of defamation.

2.     Plaintiff brings claims under § 1681e(b) and defamation against Intelifi because it falsely reported that he had pled guilty to sexual offenses against a minor

3.     Intelifi is a consumer reporting agency and provides its customers with consumer reports (background checks) used for employment purposes.  The background checks qualify as consumer reports because the information contained in Intelifi's reports constitutes:

> written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for [in this case, employment.

15 U.S.C. § 1681a(d)(1).

4.     The FCRA requires that companies like Intelifi—which sell employment and/or background check reports that have a serious and decisive impact on the ability of consumers to obtain employment and/or housing opportunities—follow reasonable procedures to assure the maximum possible accuracy of the information they report. Congress described these obligations placed on consumer reporting agencies as "grave responsibilities."  15 U.S.C. § 1681.

5.      Consumer reporting agencies ("CRAs") such as Intelifi create consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. Defendant's practices harm consumers seeking employment by prejudicing prospective employers with inaccurate adverse information.

6.      To further protect consumers, the FCRA makes it presumptively illegal for a consumer reporting agency like Intelifi to furnish a report in the employment context.  A consumer reporting agency may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice *before* taking an adverse employment action.

7.      The FCRA also requires that a consumer reporting agency reporting negative public record information likely to adversely affect a consumer's ability to obtain employment, must provide the consumer with contemporaneous notice of the information it is reporting and to whom it is reporting it.

8.      Underscoring the effects consumer reports can have on a consumer's life and job prospects, the FCRA prohibits consumer reporting agencies from reporting charges that have been amended, records of arrest, or any other adverse items of information, other than the records of convictions of crime, that antedate the report by more than seven years.

9.      Combined, these interlocking measures are intended to protect consumer privacy by restricting the use of consumer reports to permissible purposes; implement safeguards to ensure the information being reported is accurate and up to date; ensure dissemination of consumer reports is limited to persons abiding by the FCRA's statutory requirements; and ensure consumers are timely informed what is being reported about them and to whom it is being reported.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

10.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11.     Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and Defendant transacts business within this District and Division.

## PARTIES

12.     Plaintiff Eric Crain is a natural person and a resident of the State of Tennessee.  He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

13.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation. It is headquartered in Beverly Hills, California.

## FACTUAL ALLEGATIONS

### Section 1681e(b) of The Fair Credit Reporting Act Requires Substantive Investigations

14.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v.*

*Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

15.    "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

16.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

17.    Further, as the CRA Defendant is aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

---

1

2

18.    It has long been the law – since 1970 in fact – that:

3

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

4

5

6

7

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

8

9

### Defendant Failed to Accurately Report Consumer Information

10

11

19.    In January of 2022, Plaintiff was employed by the Hermitage Hotel in Nashville, Tennessee.

12

13

20.    As a condition of employment, Plaintiff was required to undergo a background check.

14

15

21.    Plaintiff was not provided a compliant FCRA disclosure by the Hermitage Hotel.

16

17

22.    Plaintiff's background report was procured from Intelifi by "Superior Occupational Solutions."

18

19

23.    The Hermitage Hotel terminated Plaintiff's employment after it reviewed his consumer report.

20

21

24.    The Hermitage Hotel did not provide Plaintiff with the opportunity to review his consumer report before it terminated his employment.

22

23

24

25

———————————————

26

27

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

28

25.     If Intelifi had required the Hermitage Hotel to certify it would provide Plaintiff with notice and a copy of his report before taking an adverse employment action against him, Plaintiff would have had such opportunity.

26.     After Plaintiff was terminated, he obtained a copy of the consumer report Intelifi published to Superior Occupational Solutions (which Hermitage Hotel had reviewed) and which served as the basis for his termination.

27.     The report included the following entry, indicating Plaintiff had pled guilty to sexual offenses against a minor:

| OFFENSE # 1 | CHARGE: | SEX / CRIMINAL SEXUAL CONDUCT WITH MINOR - VICTIM 11 TO 14 YRS OF AGE INCLUSIVE (STATUTE: 0396) | SEVERITY: | UNKNOWN |
|---|---|---|---|---|
| | | | FINAL DISPOSITION: | PLED GUILTY |
| | CHARGE DATE: | 2005-03-08 | COMMENTS: | ORIGINAL OFFENSE: SEX / CRIMINAL SEXUAL CONDUCT WITH MINOR - VICTIM (STATUTE: 0396) |
| | ARREST DATE: | 2005-03-04 | | |
| | DISPOSITION DATE: | 2006-01-25 | | |

28.     The information contained in the report was false and flat out wrong.  Plaintiff had never pled guilty to a sexual offense against a minor. To the contrary, the charges against Plaintiff were dropped ten years earlier, as court's website clearly indicates:

| The State of South Carolina VS ERIC ALLEN CRAIN | | | | | |
|---|---|---|---|---|---|
| Case Number: | I335179 | Court Agency: | General Sessions | Filed Date: | 03/08/2005 |
| Case Type: | Criminal-Clerk | Case Sub Type: | | | |
| Status: | Disposed | Assigned Judge: | | Disposition Judge: | Solicitor |
| Disposition: | Nolle Prosequi | | | | |
| Disposition Date: | 01/05/2012 | Date Received: | 03/08/2005 | Arrest Date: | 03/04/2005 |
| Law Enf. Case: | | True Bill Date: | | No Bill Date: | |
| Prosecutor Case: | | Indictment Number: | 2005GS3901399 | Waiver Date: | |
| Probation Case: | | | | | |

29.     Plaintiff has never been convicted or pled guilty to a sexual offense against a minor.

30.     Besides being shocked by the inaccurate information being reported about him, Plaintiff was equally surprised to learn Intelifi had provided his consumer report to Superior Occupational Solutions.  It had never been disclosed to Plaintiff that Superior Occupational

---

Solutions intended to procure his consumer report and Plaintiff had never authorized it to obtain his consumer report for employment purposes.

31.     Discovery will prove Intelifi never obtained certification from Hermitage Hotel that it had provided Plaintiff a written disclosure, obtained his written authorization to procure his consumer report, or would, if applicable, provide him with notice and a copy of his report before taking an adverse employment action against him.

32.     Discovery will prove Intelifi never obtained certification from Superior Occupational Solutions that it had provided Plaintiff a written disclosure, obtained his written authorization to procure his consumer report, or would, if applicable, provide him with notice and a copy of his report before taking an adverse employment action against him

33.     If Intelifi had required Superior Occupational Solutions to make the requisite certifications before obtaining Plaintiff's consumer report, Plaintiff would have received a compliant disclosure form and would have received pre-adverse action notice, including a copy of his consumer report, before being subjected to an adverse employment action.

34.     If Intelifi had required Hermitage Hotel to make the requisite certifications before obtaining Plaintiff's consumer report, Plaintiff would have received a compliant disclosure form and would have received pre-adverse action notice, including a copy of his consumer report, before being subjected to an adverse employment action

35.     Discovery will prove Intelifi never provided Plaintiff with contemporaneous notice that it was reporting negative public record information about him to Superior Occupational Solutions or Hermitage Hotel.

36. Discovery will prove Intelifi did not maintain strict procedures to ensure the public record information it reports that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date.

37. The Defendant's publication of reports and public record information which were ultimately transmitted to Hermitage Hotel would not have occurred but for the failure of Defendant to follow reasonable procedures to ensure the maximum possible accuracy of the information in Plaintiff's consumer report as required by 15 U.S.C. § 1681e(b).

38. Hermitage Hotel fired Plaintiff based on the contents of the report published by Intelifi. Ms. Vendana Atreya, a Hermitage Hotel employee, wrote, "*Eric, we have terminated your employment for failing the background check. Please see attached notice of separation*."

39. Plaintiff did not receive notice or a copy of his consumer report before Hermitage Hotel terminated his employment. Termination of employment is an adverse employment action.

40. If Plaintiff had been provided notice and a copy of his consumer report before being subjected to the adverse employment action, he would have learned his personal information was being reported inaccurately; explained the inaccuracy to his employer; and kept his job.

41. Furthermore, besides being patently false, some of the information contained in the report should never have been published, as it predated the consumer report by more than seven years and was not a criminal conviction of any type.

42. CRAs such as Defendant deal in volume and use standardized procedures to gather information and attribute it to individuals. They therefore use processes designed to be cost-effective rather than accurate, because ensuring accuracy often costs Defendant additional money.

43. Defendant failed to follow reasonable procedures to assure the maximum possible accuracy regarding the information it sold about the Plaintiff.

44.     Defendant's reporting of the inaccurate information concerning Plaintiff was neither accidental nor a result of simple negligence but instead a result of deliberate disregard and flawed policies and procedures.

### Plaintiff Suffered Actual Harm from the Inaccurate Reporting

45.     As a result of Defendant' reporting of the inaccurate information about Plaintiff he has suffered damages, including, but not limited to:

a.  Stress associated with the loss of employment;

b.  Financial loss;

c.  Loss of time attempting to cure the error;

d.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life from being labeled a sex offender and being denied employment.

e.  Stress associated with attempting to resolve this matter in the last year.

### Plaintiff's Privacy Rights Were Violated Because Intelifi Illegally Trafficked His Personal and Sensitive Information

46.     The FCRA makes it presumptively illegal for a CRA like Intelifi to furnish a report in the employment context.  A consumer reporting agency may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice.

(b) **Conditions for Furnishing and Using Consumer Reports for Employment Purposes**

(1) *Certification from user.* A consumer reporting agency may furnish a consumer report for employment purposes only if:

(A)   the person who obtains such report from the agency certifies to the agency that:

(i)      the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable…

15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

47.     These requirements must be met as to *each report* a CRA issues; blanket or prospective certifications of compliance by the users of reports are not permitted. That means that for *every report* an Intelifi employer-client procured from Intelifi, the recipient must make the requisite certifications to Intelifi. *Id*.

48.     Intelifi furnished consumer reports to its employer-clients without first obtaining certification that the consumer had been provided a lawful disclosure, had authorized in writing the procurement of the consumer report, and certification the employer would provide pre-adverse action notice when applicable. Because Intelifi failed to obtain this certification, Plaintiff was not provided a compliant disclosure and never received pre-adverse action notice or a copy of his consumer report prior to being fired.

49.     Any consumer report published without the requisite certifications in placed is not published for a permissible purpose.

50.     In the employment context, the FCRA imposes upon CRAs and additional requirements designed to protect consumers' rights.  In keeping with the FCRA's fundamental goal of transparency, the FCRA requires that CRAs that provide reports that contain public-record information likely to have an adverse effect on a consumer's ability to obtain employment, the CRA must either:

(1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1),(2).

51.     Intelifi violated 15 U.S.C. § 1681k(a)(1) when it failed to provide Plaintiff with contemporaneous notice when it furnished Plaintiff's consumer report information to Superior Occupational Solutions. The information Intelifi furnished – charges and a guilty plea for sexual offenses against a minor – fit the bill of "negative information" likely to have an adverse effect on employment.  However, Intelifi never notified Plaintiff that it was reporting negative information about him or reporting such information to anyone at all.

52.     Intelifi also violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public-record information it reports is complete and up to date. Intelifi simply relied upon its vendor, RapidCourt.com, to maintain such procedures, which RapidCourt.com clearly failed to maintain, and as a result, reported incomplete and outdated information about Plaintiff.

53.     Discovery will prove Intelif published hundreds of thousands of consumer reports for which it did not maintain strict procedures to ensure was complete and up-to-date.

54.     Discovery will prove Intelif failed to provide thousands, if not hundreds of thousands of consumers with contemporaneous notice it was reporting negative public record

information about them that was likely to have an adverse effect on their employment.

55.     The FCRA also prohibits certain information from being included on a consumer report.

> **Requirements relating to information contained in consumer reports**
>
> (a)     *Information excluded from consumer reports.* Except as authorized under subsection (b) of his section, no consumer reporting agency may make any consumer report containing any of the following items of information:
>
> (5)     Any other adverse item of information, **other than records of convictions** of crimes which antedates the report by more than seven years.

15 U.S.C. §§ 1681c(a)(5)

56.     Discovery will prove Intelifi disseminated thousands, if not hundreds of thousands, of consumer reports containing prohibited information, such as arrests and other non-conviction information more than seven years old, on consumer reports it knew were being used for employment purposes.

## COUNT ONE – VIOLATION OF FAIR CREDIT REPORT ACT
### 15 U.S.C. § 1681e(b)
### (Plaintiff, Individually)

57.     Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in Plaintiff's consumer report. Consequently, Defendant inaccurately reported that he had pled guilty to committing sex offenses against a minor, when in fact charges against him had been dismissed.

58.     As a result of Defendant's failures, Plaintiff suffered actual damages, including but not limited to:  the loss of his ability to obtain housing, loss of sleep, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

59.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

60.     Because Defendant's conduct was also willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts above. 15 U.S.C. § 1681n.

### COUNT TWO – DEFAMATION
**(Plaintiff, Individually)**

61.     Plaintiff asserts this claim in the alternative to his FCRA claims, to the extent the Defendant may argue that the FCRA does not apply to them.

62.     Within the context of the foregoing allegations, Defendant made multiple false and defamatory statements regarding the Plaintiff.

63.     In each statement, the Defendant identified Plaintiff by name. Each statement was also false, as Plaintiff never plead guilty to sex offenses against a minor.

64.     Labeling Plaintiff a sex offender was defamatory because such a label tends to lower one's reputation within the community or expose one to ridicule.

65.     Defendant intended to publish the statements, and the statements were false.

66.     Defendant published the statements knowing they were false or acting in reckless disregard for the truth or falsity of the statements.

67.     As a result of Defendant's conduct, actions and inactions, Plaintiff suffered various types of damages as set forth herein, including specifically the loss of the ability to obtain housing, mental and emotional pain, anguish, humiliation and embarrassment of being inaccurately labeled a sex offender, and damage to his reputation.

68.     This defamation was malicious, willful, deliberate, intentional and/or with reckless disregard for the interests and rights of the Plaintiff, so as to justify an award of punitive damages against the Defendant in an amount to be determined by the Court.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff asserts a claim against Intelifi on behalf of a "Certification Class," defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Intelifi and obtained through Intelifi that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

70.     Plaintiff also asserts a claim against Intelifi on behalf of a "1681k Class," defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Intelifi and obtained through Intelifi that included criminal history entries of the grade of misdemeanor or higher, within five years of the filing of this lawsuit through the date of final judgment in this action.**

71.     Plaintiff asserts a claim against Intelifi on behalf of a "Prohibited Information Class" defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report made by Intelifi and published to third parties that contained adverse items of information, other than records of convictions of crimes, which antedate the report by more than seven years.**

72.     This defamation was malic This action has been brought and may be maintained as a class action Ca. Code Civ. Proc. § 382 because: (1) the classes are so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the classes, which common questions predominate over any questions affecting only individual members; (3) Plaintiff and his Counsel will fairly and adequately protect the interest of the classes; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

73.    **Numerosity.**  The members of the putative classes are so numerous that joinder of all class members is impracticable.  Intelifi regularly compiles consumers' personal, private and sensitive information into consumer reports for sale to employers.  Plaintiff is informed and believes that during the relevant time period, tens of thousands of employees and prospective employees, if not hundreds of thousands, satisfy the definition of the putative classes.  Based on the number of putative class members and their geographic disbursal, joinder is impracticable. The names and addresses of the class members are identifiable through Intelifi's records and putative class members may be notified of this action by mailed notice.

74.    **Predominance of Common Questions of Law or Fact.**  Class treatment is also appropriate because questions of law or fact common to the putative Classes predominate over any questions affecting only individual members of the putative Classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Intelifi's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Such common questions include, among others:

a.    whether Defendant furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2), before furnishing such reports;

b.    whether Defendant furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(3), if applicable;

c.    whether Defendant's violations of the FCRA were willful;

d.    the proper measure of statutory damages; and

e.    the proper form of relief.

75.     Members of the putative Class do not have an interest in pursuing separate actions against Intelifi, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant.  Moreover, management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

76.     This case is further maintainable as a class action because prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Intelifi.  Further, adjudication of each individual class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

77.     This case is also maintainable as a class action because Intelifi acted or refused to act on grounds that apply generally to the putative Class.

78.     Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Intelifi's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative class do not have an interest in pursuing separate actions against Intelifi, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of

individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

79. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the putative Classes and has retained Counsel experienced in complex class action litigation, including nationwide class actions pressing claims under the FCRA.

### CLASS ACTION CLAIMS

**COUNT III -FCRA Violation**
**Failure to Obtain Certification Prior to Furnishing a**
**Consumer Report for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(1)(A)**
**(Individually and on behalf of the "Certification Class")**

80. Intelifi willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided consumer reports about Plaintiff and class members, which were used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3).

81. Intelifi invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer report without a permissible purpose.

82. Intelifi caused Plaintiff injury because the report Intelifi furnished was used, in whole or in part, as the basis for an adverse employment action.

83. Intelifi caused Plaintiff injury because Intelifi permitted the user of its consumer reports to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes by failing to require Hermitage Hotel to

certify compliance therewith.

84.    The forgoing violations were willful. At the time Intelifi violated 15 U.S.C. § 1681b(b)(1)(A), Intelifi knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) from Hermitage Hotel with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable.  Intelifi's willful conduct is also reflected by, among other things, the following facts:

       a.    Intelifi knew of potential FCRA liability;

       b.    Intelifi is a company with access to legal advice through its own

       c.    general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

       d.    The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

       e.    Intelifi knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

       f.    Intelifi voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

85.    Plaintiff and the Certification Class are entitled to statutory damages of between $100.00 and $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

86.    Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**COUNT IV – FCRA Violation**
**Failure to Provide Contemporaneous Notice in Violation of 15 U.S.C. § 1681k**
**(Plaintiff, individually and on behalf of the "§ 1681k Class")**

87.     Intelifi willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about Plaintiff and Class Members, which were used for employment purposes and contained negative public-record information likely to have an adverse effect on consumers' ability to obtain employment, without providing the subjects of the report contemporaneous notice that it was furnishing the report to the users.

88.     Intelifi cannot rely on the "strict procedures" requirement of Section 1681k(a)(2) because it takes no steps to ensure the public-record information it reports is complete and up to date.

89.     Plaintiff and Class Members suffered an invasion of privacy by Intelifi's failure to provide them with statutorily required notice before releasing their personal, sensitive information.

90.     Plaintiff and Class Members suffered informational injury by Intelifi's failure to provide them with statutorily required information when such information was due.

91.     Intelifi further caused Plaintiff and Class Members injury because it deprived Plaintiff and Class Members of the knowledge that it was reporting information about them that may affect their job prospects, eliminating those individuals' ability to correct inaccuracies or preemptively discuss any negative information with potential employers.

92.     Intelifi unjustly enriched itself by selling the personal information of Plaintiff and Class members without providing them the required notice and information.

93.     The forgoing violations were willful.  At the time Intelifi violated 15 U.S.C. § 1681k(a)(1), Intelifi knew it was required to provide contemporaneous notice of its furnishing of reports because it has no process in place to meet the strict procedures requirement of Section

_____
COMPLAINT AND DEMAND FOR JURY TRIAL
- 20-

1681k(a)(2) when it furnishes reports for employment purposes that contain negative public-record information. Intelifi's willful conduct is also reflected by, among other things, the following facts:

      a.      Intelifi knew of potential FCRA liability;

      b.      Intelifi is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

      c.      The FCRA's at-the-time notice requirement is clearly spelled out in the plain language of the statute;

      d.      Intelifi knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      e.      Intelifi voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

The forgoing violations were willful. The forgoing violations were willful. Plaintiff and the 1681k Class are entitled to statutory damages of between $100.00 and $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

94.     Plaintiff and the 1681k Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative Certification Class pray for relief as follows, in the form of an order:

      a.      determining that this action may proceed as a class action;

b.     designating Plaintiff as class representative and designating Plaintiff's Counsel as counsel for the putative classes;

c.     requiring notice to the putative class at Intelifi's expense;

d.     finding that Intelifi committed multiple, separate violations of the FCRA;

e.     finding that Intelifi acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.     awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT V – FCRA Violation
### Reporting Prohibited Information in Violation of 15 U.S.C. § 1681c(a)
### (Plaintiff, individually and on behalf of the "Prohibited Information Class")

95.     Intelifi willfully violated 15 U.S.C § 1681c(a)(5) when it published his consumer report, which contained information other than records of criminal convictions with antedated the report by more than seven years.

96.     Plaintiff and Class Members suffered an invasion of privacy when Intelifi published their consumer reports containing statutorily prohibited information.

97.     Intelifi unjustly enriched itself by illegally trafficking, for a profit, the Plaintiff and Class Members' personal, sensitive information.

98.     The plain language of the statute clearly spells out the information CRAs are prohibited from including in consumer reports.

99.     Intelifi knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute.

100.    The plain language of the statute clearly spells out the information CRAs are prohibited from including in consumer reports.

101.    Intelifi knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; andIntelifi voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

102.    Plaintiff and the "Prohibited Information Class" are entitled to statutory damages of between $100.00 and $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

103.    Plaintiff and the putative "Prohibited Information Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the "Prohibited Information Class" pray for relief as follows, in the form of an order:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's Counsel as counsel for the putative classes;

c.    requiring notice to the putative class at Intelifi's expense;

d.    finding that Intelifi committed multiple, separate violations of the FCRA;

e.    finding that Intelifi acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

///

///

///

f.    awarding statutory damages as provided by the FCRA, including punitive

damages, to members of the putative class; and

g.    awarding reasonable attorneys' fees and costs as provided by the FCRA

DATED: May 16, 2023                              DOYLE LAW, APC

                                    By: ___/s/ Conal Doyle_____

                                         Conal Doyle

                                         Attorneys for Plaintiff